# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

**No. ACM 39080**

————————————

**UNITED STATES**
*Appellee*

**v.**

**Zachary A. KICKER**
Airman Basic (E-1), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

Decided 14 December 2017

————————————

*Military Judge:* Matthew P. Stoffel.

*Approved sentence:* Bad-conduct discharge, confinement for 6 months, and forfeiture of all pay and allowances. Sentence adjudged 28 January 2016 by GCM convened at Sheppard Air Force Base, Texas.

*For Appellant:* Lieutenant Colonel Jennifer J. Raab, USAF; Major Lauren A. Shure, USAF.

*For Appellee:* Major Rebecca A. Magnone, USAF; Major Mary Ellen Payne, USAF; Gerald R. Bruce, Esquire.

Before DREW, MAYBERRY and DENNIS, *Appellate Military Judges*.

Senior Judge MAYBERRY delivered the opinion of the court, in which Chief Judge DREW and Judge DENNIS joined.

————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.**

————————————

MAYBERRY, Senior Judge:

A general court-martial composed of a military judge sitting alone found Appellant guilty, contrary to his pleas, of one specification of conspiracy to use lysergic acid diethylamide (LSD), in violation of Article 81, Uniform Code of

Military Justice (UCMJ), 10 U.S.C. § 881, and one specification each of divers wrongful introduction of LSD onto a military installation, divers wrongful use of LSD, and wrongful distribution of LSD, in violation of Article 112a, UCMJ, 10 U.S.C. § 912a.[1] The court sentenced Appellant to a bad-conduct discharge, total forfeiture of pay and allowances, and confinement for six months. The convening authority approved the adjudged sentence.

Appellant asserts two assignments of error (AOEs) pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982): (1) The military judge erred in denying Appellant's motion to suppress all statements made by Appellant to law enforcement and all derivative evidence gathered as a result of those statements; and (2) The military judge erred in denying Appellant's motion to suppress the contents of Appellant's cellular phone and derivative evidence obtained as a result of an illegal search. In addition, although not raised by Appellant, we note the post-trial processing of his case was subjected to a facially unreasonable delay. We find no prejudicial error and affirm.

## I. BACKGROUND

Appellant was in technical training at Sheppard Air Force Base (AFB), Texas, having previously been reclassified out of Pararescue training. Appellant and the military were not a good fit, and after only seven months of service, Appellant was facing administrative discharge. Another member of Appellant's training squadron, Airman Basic (AB) Hunter Denny,[2] was under investigation by the Air Force Office of Special Investigations (AFOSI) for use of cocaine. On 10 July 2015, the squadron first sergeant suggested AFOSI interview Appellant, telling the agents that Appellant recently had a "falling out" with AB Denny and informing them of Appellant's separation in three days.

AFOSI interviewed Appellant as a witness that same day. The interview took place in an interview room with recording equipment but the interview was not recorded. The interview was conducted by two special agents (SA): SA GE, who had one year of experience and had participated in dozens of interviews, and SA ED, who had six months of experience and had participated in approximately five interviews. After the typical "rapport building" dialogue,

---

[1] Appellant was found not guilty of one specification each of fraudulent enlistment and making a false official statement in violation of Articles 83 and 107, UCMJ, 10 U.S.C. §§ 883, 907.

[2] AB Denny's name is included because he was court-martialed and convicted for drug use.

SA GE asked Appellant about a recent trip to Dallas, Texas.[3] Appellant provided information regarding a trip to Dallas he made the previous weekend with "Tanner"[4] and "Danny." As Appellant described what the three did while in Dallas, the agents assumed that "Danny" was AB Denny. For the most part, the agents made no attempt to confirm that "Danny" was AB Denny with the sole exception of asking Appellant for Danny's full name. Appellant said he did not know "Danny's" full name and only knew "Danny" through Tanner. Only after AFOSI interviewed Tanner the next day did they discover that "Danny" was in fact Staff Sergeant (SSgt) Danny Williams,[5] not AB Denny.

Appellant was hesitant to provide answers to the questions posed by AFOSI and not particularly forthcoming with details. Initially, Appellant described the events in Dallas as going to the apartment of a female friend of Tanner, watching movies, and generally just hanging out. When AFOSI pressed for more details, Appellant indicated the group had been drinking. The agents told Appellant they were not concerned with underage drinking as that was not a crime they investigated. After a period of reluctance by Appellant to volunteer any further details, Appellant told the agents that he saw both Tanner and Danny use LSD in the apartment. Appellant testified (at the hearing on the motion to suppress) that he revealed Tanner and Danny's drug use as the agents were getting up to leave the interview because they were frustrated by his failure to give them anything. "They kind of told me to wait, to necessarily take myself out of the situation." They said, "Tell us what you see. Don't -- not necessarily don't implicate, but take yourself out of the situation and just tell us what you see." Both agents denied this scenario, but SA GE testified that the focus of the witness interview was what Appellant saw, not what he did. According to the agents' testimony during the motions hearing, they still believed Appellant was only a witness and therefore did not advise Appellant of his rights under Article 31, UCMJ.

After Appellant provided information about Tanner and Danny's LSD use, the agents asked him for more details. Over time, Appellant told the agents that Tanner purchased six tabs of LSD for $60 from someone who came to the apartment. He described seeing Tanner and Danny ingest the LSD. According to Appellant, the agents asked if seeing Tanner and Danny ingest the LSD was

---

[3] SA GE was investigating AB Denny for drug use and suspected AB Denny had used drugs on a trip to Dallas. AFOSI unsuccessfully attempted a controlled buy of drugs from AB Denny the night before they interviewed Appellant.

[4] During the interview, Appellant referred to "Tanner" and identified him as AB Tanner Wideman. AB Wideman's name is included because he was court-martialed and convicted for his involvement in these activities.

[5] SSgt Williams' name is included because he was court-martialed and convicted for his involvement in these activities.

the only time Appellant had seen someone using drugs. Appellant believed they already knew about another trip because the agents had told Appellant earlier in the interview they had been working on this case for months. Appellant went on to describe a separate trip to Dallas with Tanner in April, when he saw Tanner use LSD at a "rave" and at the hotel where they stayed.

At the end of the interview, Appellant agreed to provide a written statement. The record contains a two-page document consisting of the second page of an Air Force Form 1168 and a continuation page. Each page contains two short paragraphs, each discussing the events in Dallas in April and July.

There is conflicting evidence regarding whether Appellant's statement was written in one or two sessions. Appellant testified that he wrote the first page and then wrote the additional page after the agents reviewed his statement and indicated he needed to include more details. SA GE initially testified that both pages were written at the same time, with no prompting or additional questioning, but later said it was possible that when the agents told Appellant to be more specific, he wrote the additional page. SA ED indicated that the last thing Appellant wrote in his statement was that Tanner bought the drugs from a dealer named Josh and that prompted the agents to ask Appellant how Tanner obtained the drugs in April. The evidence is undisputed that when the agents asked Appellant how Tanner got the LSD in April, Appellant indicated that he could not answer without incriminating himself.

The agents left the interview room for approximately 45 minutes. During this time they consulted with their leadership as well as Sheppard AFB legal office personnel and determined that in order to continue with the interview, they would need to advise Appellant of his Article 31 rights. Prior to re-entering the interview room, the agents turned on the recording equipment and thereby captured the exchange between themselves and Appellant, even prior to the rights advisement.

SA GE began by informing Appellant "we cannot go the witness route anymore" and saying he knew Appellant was "pissed" at him. SA GE encouraged Appellant to continue to tell him the truth, to give him information to pass on to Appellant's commander, and to keep everything on track for Appellant to leave the Air Force the next week. Eighteen minutes into the interview, Appellant said, "you're just gassing me up so just start it, it can't get worse than it already is." Twenty-two minutes into the interview, SA GE said that he was going to go through "a little formality" that they go through with everybody they "think can have more information than just a witness statement about other people." It was not until 35 minutes into the interview that SA GE finally read Appellant his Article 31 rights. At trial, SA GE explained that he used those 35 minutes to "make sure [Appellant] was at ease, that he was not mad

and he understood what I was there for." At no point did SA GE provide Appellant a cleansing statement.

After the Article 31 rights advisement, Appellant indicated he understood his rights, did not want an attorney, and was willing to answer questions. The agents then spent the next 30 minutes asking questions about Appellant's involvement with drugs. He admitted using LSD in April and July of 2015 while in Dallas with Tanner and Danny. He also admitted to having LSD mailed to Sheppard AFB and to using marijuana prior to joining the military. He also provided an additional written statement detailing these admissions.

Approximately one hour after Appellant waived his Article 31 rights, SA GE asked him for consent to a urine test and a search of his cellphone. Appellant agreed to the urine test and also consented to a search of his dormitory room, but he refused to consent to a search of his cellphone.

Following the interview, while Appellant was writing his suspect statement, the agents sought and received search authorization for Appellant's urine, cellphone, and dormitory room. The verbal authorization was memorialized on an Air Force Information Management Tool (AF IMT) 1176 form, dated 12 July 2015, that stated "No search conducted pursuant to the authority herein shall be initiated later than three days from 11 July 2015." Acting in accordance with the verbal search authorization, SA GE seized Appellant's cellphone and conducted a search of it on 11 July 2015, by scrolling through the contents of the cellphone. He found text messages and videos regarding LSD use, which corroborated Appellant's earlier statements.

On 23 July 2015, another AFOSI agent conducted a search of Appellant's cellphone. This agent noted Appellant's cellphone contained video of Appellant and AB Wideman ingesting LSD while in Dallas. The agent also reviewed text messages on Appellant's cell phone purportedly exchanged between Appellant and AB Wideman discussing 19 possible narcotics uses.

## II. DISCUSSION

### A. Admissibility of Statements by Appellant

We review a military judge's denial of a motion to suppress a confession for an abuse of discretion. *United States v. Chatfield*, 67 M.J. 432, 437 (C.A.A.F. 2009). The military judge's findings of fact are reviewed for clear error, while the conclusions of law are reviewed de novo. *Id.* (citing *United States v. Keefauver*, 74 M.J. 230, 233 (C.A.A.F. 2015)). "[A] military judge abuses his discretion when his findings of fact are clearly erroneous, when he is incorrect about the applicable law, or when he improperly applies the law." *Id.* (quoting *United States v. Roberts*, 59 M.J. 323, 326 (C.A.A.F. 2004)). When reviewing a

motion to suppress, we consider the evidence in the light most favorable to the prevailing party. *Id.*

### 1. Pre-Rights Advisement Statements

Whether a person is a suspect is an objective question that "is answered by considering all the facts and circumstances at the time of the interview to determine whether the military questioner believed or reasonably should have believed that the service member committed an offense." *United States v. Swift*, 53 M.J. 439, 446 (C.A.A.F. 2000). The trial judge made lengthy findings of fact and properly concluded that Appellant was not a suspect when the AFOSI interview began, but during the course of the interview there was a point in time where the agents reasonably should have believed Appellant was involved with illegal drug use. The military judge further found that the agents' failure to recognize that Appellant should have been considered a suspect was due to a lack of experience, rather than an attempt to subvert Appellant's rights. *See Missouri v. Seibert*, 542 U.S. 600 (2004). As a result, the military judge held that Appellant's statements made prior to the Article 31 rights advisement were not the result of actual coercion, duress, or unlawful inducement.

### 2. Post-Rights Advisement Statements

The military judge found that the statements Appellant made after AFOSI should have suspected him of drug use were not the result of coercion, duress, or unlawful inducement. However, the judge also found that the previous unwarned statements weighed in favor of finding the statements to be involuntary, as did the lack of a cleansing statement. The military judge considered Appellant's post-rights advisement statements in light of the totality of the circumstances and concluded by a preponderance of the evidence that the statements were voluntary. He also considered Appellant's experience with free legal counsel based on his prior nonjudicial punishments, his above average intelligence, as well as his demeanor and thoughtful, measured responses. Finally, the military judge considered that Appellant continued to demonstrate free will in denying consent to search his cellular phone while consenting to searches of his urine and his dorm room.

The military judge did not abuse his discretion when he suppressed the statements Appellant made to AFOSI after he should have been considered a suspect but before he was advised of his Article 31 rights. The military judge also did not abuse his discretion when he did not suppress Appellant's statements made prior to when he should have been considered a suspect and those made following his rights advisement and waiver.

Appellant provided evidence of drug use by AB Wideman and SSgt Williams prior to the point in time when AFOSI should have suspected him of also

being involved in drug use. Within 48 hours after Appellant's interview, both AB Wideman and SSgt Williams were interviewed and their respective cellphones were searched. Because Appellant's statements about AB Wideman and SSgt Williams were voluntary, the derivative evidence obtained from their interviews was lawfully obtained. The military judge did not abuse his discretion by not suppressing it.

**B. Admissibility of Cellphone Evidence**

We review a military judge's ruling on a motion to suppress for an abuse of discretion, viewing the evidence in the light most favorable to the prevailing party. *Keefauver*, 74 M.J. at 233. The military judge's findings of fact are reviewed under the clearly erroneous standard while conclusions of law are reviewed *de novo. Id.*

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. amend. IV. "Searches conducted after obtaining a warrant or authorization based on probable cause are presumptively reasonable whereas warrantless searches are presumptively unreasonable unless they fall within a few specifically established and well-delineated exceptions." *United States v. Hoffmann*, 75 M.J. 120, 123–24 (quoting *United States v. Wicks*, 73 M.J. 93, 99 (C.A.A.F. 2014) (internal quotation marks omitted)). While the Fourth Amendment does not impose deadlines for the digital examination of seized devices, in our jurisdiction, the AF IMT 1176 form is the template for search authorizations. This document contains preprinted language stating, "no search conducted pursuant to the authority herein granted shall be initiated later than three days from _____."

During Appellant's subject interview, after he waived his rights to remain silent and to have counsel present, he made statements that indicated he used his cellphone to contact a drug dealer and communicate with AB Wideman via text message concerning LSD use. At one point during the interview, he used his cellphone to get the address of the Dallas apartment he visited in July of 2015. After Appellant declined to consent to AFOSI searching his cellphone, the agents contacted the military magistrate and received verbal authorization to seize and search the cellphone. The magistrate documented the authorization the following day on an AF IMT 1176 and listed the start date of the three-day period to initiate the search as "11 July 15." SA GE testified that he conducted a scroll search of the cellphone shortly after returning from searching Appellant's dormitory room on 11 July 2015. He testified he saw texts and videos that corroborated Appellant's statements during that scroll search. Finally, SA GE testified that he used the information he had seen on Appellant's cellphone during his interview of AB Wideman two days later.

Appellant does not contest that there was probable cause to search his cellphone or that the search authorization was valid. Rather, Appellant asserts law enforcement's search of his cellphone on 23 July 2015 was outside the scope of the three-day period specified on the search authorization and therefore unlawful. While trial counsel contended that the AF IMT 1176 needs to change,[6] referred to the three-day language as "boilerplate," and characterized the 23 July 2015 search as a *de minimis* violation pursuant to *United States v. Cote*, 72 M.J. 41 (C.A.A.F. 2013), the crux of trial counsel's argument centered on the testimony that the search of Appellant's cellphone was initiated within three days by SA GE's scroll search. Appellant asserted that SA GE was not truthful when he testified that he performed a scroll search of the cellphone on 11 July 2015 because the Report of Investigation does not contain a reference to him having done so.[7]

The military judge denied the motion to suppress, stating:

> The prosecution bears the burden of proving by a preponderance of the evidence that the search and seizure of the accused's cellular phone was constitutional. The ultimate touchstone of any Fourth Amendment inquiry is always reasonableness. Mere technical or *de minimis* violations of a warrant's terms are not unreasonable and do not warrant suppression. However, a search and seizure conducted under a warrant must conform to the warrant or some well-recognized exception. Words should be given their plain meaning absent ambiguity. "Initiate" means to start or begin something. As Special Agent [E] started a search of the accused's phone within the three-day deadline imposed by the military magistrate, Agent [E] complied with the terms of the search authorization. The additional search conducted outside the three-day deadline was not unreasonable given the initial search had already been conducted within the allotted time.

---

[6] The court has addressed this topic previously. *See United States v. Richards*, No. ACM 38346, 2016 CCA LEXIS 285 (A.F. Ct. Crim. App. 2 May 2016) (unpub. op.); *United States v. Carpenter*, No. ACM 38628, 2016 CCA LEXIS 15 (A.F. Ct. Crim. App. 14 Jan. 2016) (unpub. op.).

[7] The Report of Investigation contains two references to searching Appellant's cellphone. On page 5, paragraph 2-9 states "Search of Subject's cellular phone: on 11 Jul 15, SA [E] and SA [D] seized SUBJECT's personal cellular telephone via verbal Authority to Search and Seize." On page 7, paragraph 2-23 states "Search of SUBJECT's Cellular Telephone: on 23 Jul 15, INV [M] conducted a scroll analysis of SUBJECT's personal cellphone, which revealed video footage of SUBJECT and SUBJECT WIDEMAN ingesting small paper tabs SUBJECT identified as LSD, in a hotel room SUBJECT identified in Dallas, TX. . . ."

We concur with the military judge's findings of fact and conclusions of law. The military judge did not abuse his discretion in denying Appellant's motion to suppress the evidence obtained from his cellphone.

## C. Delay in Completing Appellate Review

Appellant has not asserted a right to timely review and appeal. However, we note that Appellant's case was docketed with this court on 7 June 2016 and appellate review was not completed within 18 months. We review de novo whether an appellant has been denied the due process right to a speedy post-trial review and appeal. *United States v. Moreno*, 63 M.J. 129, 135 (C.A.A.F. 2006). In *Moreno*, the United States Court of Appeals for the Armed Forces established a presumption of unreasonable post-trial delay that requires a due process review when:

(1) the convening authority does not take action within 120 days of trial;

(2) the record of trial is not docketed by the service Court of Criminal Appeals within 30 days of the convening authority's action; or

(3) appellate review is not completed within 18 months of docketing.

*Id.* at 142.

If there is a *Moreno*-based presumption of unreasonable delay or an otherwise facially-unreasonable delay, we examine the claim under the four factors set forth in *Barker v. Wingo*, 407 U.S. 514, 530 (1972): "(1) the length of the delay; (2) the reasons for the delay; (3) the appellant's assertion of the right to timely review and appeal; and (4) prejudice." *Moreno*, 63 M.J. at 135. *Moreno* identified three types of prejudice arising from post-trial processing delay: (1) oppressive incarceration; (2) anxiety and concern; and (3) impairment of ability to present a defense at a rehearing. *Id.* at 138–39.

"We analyze each factor and make a determination as to whether that factor favors the Government or [Appellant]." *Id.* at 136. Then, we balance our analysis of the factors to determine whether a due process violation occurred. *Id.*; *see also Barker*, 407 U.S. at 533 ("Courts must still engage in a difficult and sensitive balancing process."). "No single factor is required for finding a due process violation and the absence of a given factor will not prevent such a finding." *Id.* However, where an appellant has not shown prejudice from the delay, there is no due process violation unless the delay is so egregious as to "adversely affect the public's perception of the fairness and integrity of the military justice system." *United States v. Toohey*, 63 M.J. 353, 362 (C.A.A.F. 2006).

Recognizing our authority under Article 66(c), UCMJ, we have also considered whether relief for excessive post-trial delay is appropriate in this case even in the absence of a due process violation. *See United States v. Tardif,* 57 M.J. 219, 221, 225 (C.A.A.F. 2002). Although the issues in this case were filed

pursuant to *Grostefon*, the accompanying brief provided minimal factual synopses and citations to law, instead referring this court to the motions filed at trial.[8] Prior to filing, Appellant sought and received six enlargements of time to file his brief and assignments of error, accounting for a total of 346 days. The Government filed its Answer within 30 days. The court has taken less than six months to review the record of trial, consider as well as significantly supplement the briefs of counsel, and render its decision.

Appellant is no longer in confinement and has not identified any prejudice for the presumptively unreasonable delay and we find none. After considering the factors enumerated in *United States v. Gay*, 74 M.J. 736, 744 (A.F. Ct. Crim. App. 2015), *aff'd*, 75 M.J. 264 (C.A.A.F. 2016), we conclude that the time taken to complete the review of Appellant's case is not unreasonable and we find no due process violation, nor is any exercise of our authority under Article 66(c) to grant sentence relief otherwise warranted.

## III. CONCLUSION

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the findings and the sentence are **AFFIRMED.**[9]

FOR THE COURT

KATHLEEN M. POTTER
Acting Clerk of the Court

---

[8] The court found trial defense counsel's motions tremendously helpful for their depth, detail, and specific references to Appellant's videotaped interview.

[9] We note the court-martial order contains an error in that it does not reflect the military judge's findings by exception and substitution on Charge I. We order a corrected copy.