*This opinion is subject to administrative correction before final disposition.*

# United States Navy–Marine Corps
# Court of Criminal Appeals

Before
HOLIFIELD, KIRKBY, and GANNON
Appellate Military Judges

_____

**UNITED STATES**
*Appellee*

**v.**

**David N. CASTRO**
Gunnery Sergeant (E-7), U.S. Marine Corps
*Appellant*

**No. 202300085**

_____

Argued: 4 November 2024—Decided: 3 January 2025

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judge:
Douglas C. Hatch

Sentence adjudged 12 December 2022 by a special court-martial tried at Marine Corps Base Camp Pendleton, California, consisting of officer and enlisted members. Sentence in the Entry of Judgment: hard labor without confinement for three months, restriction to the limits of quarters for two months, forfeiture of $3,318 pay per month for six months, and a reprimand.[1]

---

[1] The convening authority, in response to Appellant's clemency request, reduced the punishment to hard labor without confinement for two months, forfeiture of $2,000 pay per month for three months, and a reprimand.

For Appellant:
*Captain Colin Norton, USMC* (argued and on brief)
*Lieutenant Jackson M. Beach, JAGC, USN* (on brief)

*For Appellee:*
*Captain Jacob R. Carmin, USMC* (argued and on brief)
*Lieutenant Commander James P. Wu Zhu, JAGC, USN* (on brief)

————————————

**This opinion does not serve as binding precedent, but
may be cited as persuasive authority under
NMCCA Rule of Appellate Procedure 30.2.**

————————————

PER CURIAM:

Appellant was convicted, contrary to his pleas, of four offenses: one specification of conspiracy, in violation of Article 81, Uniform Code of Military Justice (UCMJ), one specification of willfully disobeying a superior commissioned officer, in violation of Article 90, UCMJ, one specification of failing to obey a lawful general regulation by engaging in an unduly familiar relationship with a sergeant, in violation of Article 92, UCMJ, and one specification of obstruction of justice for influencing the testimony of a potential witness, in violation of Article 131b, UCMJ.[2]

Appellant asserts a single assignment of error (AOE): did the military judge abuse his discretion in applying the good faith exception and the inevitable discovery doctrine to admit phone evidence obtained pursuant to a warrant from a military judge who was not competent to authorize the search and seizure? We find no prejudicial error and affirm.

## I. BACKGROUND

Appellant's offenses revolve around an improper relationship with a sergeant in his unit. Once the relationship was reported and being investigated,

---

[2] 10 U.S.C. §§ 881, 890, 892, 931b.

he was ordered to have no contact with the sergeant. Appellant repeatedly disobeyed that order both through in-person contact and by electronic means. During the criminal investigation that followed, he also conspired with the sergeant to obstruct justice by discussing their respective criminal proceedings with the intent to influence witnesses' testimony. Appellant's witness tampering efforts, including sharing "cheat sheets" with the sergeant and fellow Marines, had their intended effect.

At trial, each of these offenses was supported, inter alia, by evidence found on Appellant's cell phone. How that phone was seized and searched, and how the military judge ruled on the admissibility of the resulting evidence, form the basis of the issue before us.

The agent assigned to investigate the initial allegations, Agent Mike, along with trial counsel in the case, Capt Whiskey, prepared an application for authorization to seize and search Appellant's phone.[3] The application contained Agent Mike's affidavit purporting to establish probable cause. For reasons not entirely clear in the record, Capt Whiskey erroneously determined their better course was to seek a warrant signed by a military judge, not the usual command authorization for search and seizure (CASS). Accordingly, they approached Judge Baker who, misunderstanding his own authority as a military judge, signed the warrant for the phone on 22 November 2021.

Here, two wrongs still make a wrong. But Judge Baker realized his error and *sua sponte* rescinded the warrant nine months later. He stated that, while he found Agent Mike's affidavit did establish probable cause, he did not have authority to issue the warrant. In the meantime, Agent Mike had sent Appellant's phone to a forensic crime lab, where the phone's contents were downloaded and examined. Among those contents were hundreds of incriminating texts between Appellant, his sergeant paramour, and the potential witnesses they sought to influence.

In an attempt to remedy the situation, a different trial counsel and Agent Mike immediately applied for a CASS. In this application was another affidavit signed by Agent Mike on 10 August 2022. Its content varied little from the affidavit earlier presented to Judge Baker—with one significant exception. In order to explain both the delay in seeking a CASS and why the base commander was the appropriate authority, Agent Mike added the facts that Judge Baker had found probable cause and issued a warrant that he later rescinded. Although the affidavit stated that Appellant's phone was currently located in

---

[3] All names in this opinion, other than those of Appellant, trial and appellate judges, and appellate counsel, are pseudonyms.

a place subject to the base commander's authority, it made no mention of anything found on the phone.

Based on Agent Mike's affidavit, the base commander found probable cause and issued a CASS for Appellant's phone. But the Government, seeing no need to repeat the earlier search, took no action on the CASS.

At trial, Appellant's defense counsel moved to exclude the phone's contents and any evidence derived therefrom. The Government answered with two witnesses. First, Agent Mike testified that he had never before sought a search warrant from a military judge. Based on his training and experience, he had always sought a CASS. Despite this, he saw no reason to question the warrant's validity, as he was following trial counsel's advice and the warrant was signed by a military judge.

Second, Major (Maj) S, the base commander's deputy staff judge advocate, testified regarding the advice and information he provided the commander in connection with the CASS application. Maj S stated that he believed he told the commander about the rescinded warrant but did not know whether the commander considered Judge Baker's probable cause determination. Regardless, Maj S believed the commander made an independent finding of probable cause.

The military judge found "that probable cause existed on the basis of the affidavit" provided to Judge Baker and "that the Government agents objectively relied in good faith on the apparent validity of the search warrant."[4] He further found that, had the defective warrant not issued, "agents inevitably would have applied for [a] CASS . . . to an appropriate commander."[5] And he found that, based on the affidavit, the base commander "had a substantial basis to find probable cause."[6] Accordingly, the military judged ruled "that the evidence . . . seized and searched as a result of [the] defective warrant [was] admissible under the good faith exception to the exclusionary rule"[7] and was also "admissible under the inevitable discovery exception to the exclusionary rule."[8]

Additional facts necessary to resolve the AOE are provided below.

---

[4] R. at 195.

[5] R. at 196.

[6] R. at 195.

[7] R. at 193.

[8] R. at 195.

## II. DISCUSSION

### A. The military judge did not abuse his discretion in applying the inevitable discovery exception to the exclusionary rule.

Appellant argues that the military judge erred in finding that the Government would have inevitably discovered the phone's contents but for the invalid warrant. We disagree.

#### 1. Standard of Review and the Law

We review a military judge's ruling on a motion to suppress evidence for an abuse of discretion.[9] We are bound by the military judge's findings of fact unless they are clearly erroneous, but we conduct a de novo review of conclusions of law.[10] "[W]e consider the evidence in the light most favorable to the prevailing party."[11]

"Evidence obtained from reasonable searches conducted pursuant to a . . . search authorization . . . is admissible at trial when relevant and not otherwise inadmissible . . . ."[12] Evidence that results from unlawful searches is subject to the exclusionary rule, "a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect."[13] "'[S]uppression is not an automatic consequence of a Fourth Amendment violation,' but turns on the applicability of certain exceptions as well as the gravity of the government overreach and the deterrent effect of applying the rule."[14] One of these exceptions is where the evidence "inevitably would have been discovered during police investigation without the aid of the illegally obtained evidence."[15]

For the inevitable discovery exception to apply, "the Government [must] demonstrate, by a preponderance of the evidence that 'when the illegality occurred, the government agents possessed, or were actively pursuing, evidence

---

[9] *United States v. Keefauver*, 74 M.J. 230, 233 (C.A.A.F. 2015) (citations omitted).

[10] *Id.* (citations omitted).

[11] *Id.* (alteration in original) (citations omitted).

[12] Mil. R. Evid. 315(a).

[13] *United States v. Leon*, 468 U.S. 897, 906 (1984) (quoting *United States v. Calandra*, 414 U.S. 338, 348 (1974)).

[14] *United States v. Wicks*, 73 M.J. 93, 103 (C.A.A.F. 2014) (quoting *United States v. Herring*, 555 U.S. 135, 137 (2009)) (alteration in original).

[15] *Id.* (citations omitted).

or leads that would have inevitably led to the discovery of the evidence' in a lawful manner."[16] A determination of inevitability must be based on more than "mere speculation or conjecture."[17] And "[w]hen the routine procedures of a law enforcement agency would inevitably find the same evidence, the rule of inevitable discovery applies even in the absence of a prior or parallel investigation."[18]

*2. Analysis*

After correctly reciting the relevant law regarding application of the inevitable discovery exception,[19] the military judge found the following facts:

> a. Had the "defective" or "illegal authorization not occurred, the agents inevitably would have filed for a CASS . . . to an appropriate commander."[20]
>
> b. The "agents and other government actors involved were well aware that [Agent Mike] could have applied for a CASS from a competent authority."[21]
>
> c. The Government "would have applied to a commander for authority to search and seize the evidence at issue if: one, [Judge Baker] had properly denied the request for a warrant, as it should have been done [sic]; or, two, had they not misapprehended the authority of [Judge Baker] to authorize a search warrant in this case in the first place."[22]

The military judge did not explicitly state what evidence he considered in reaching these findings. But we find they are more than adequately supported by the record. These findings of fact, therefore, are not clearly erroneous.

Appellant disagrees, first arguing that the Government has provided no evidence that, at the time the phone was illegally seized, "law enforcement was

---

[16] *Id*. (quoting *United States v. Dease*, 71 M.J. 116, 122 (C.A.A.F. 2012) (additional citation omitted).

[17] *United States v. Maxwell*, 45 M.J. 406, 422 (C.A.A.F. 1996).

[18] *United States v. Owens*, 51 M.J. 204, 210-11 (C.A.A.F. 1999) (citations omitted).

[19] R. at 195-96.

[20] R. at 196.

[21] R. at 196.

[22] R. at 197.

actively pursuing evidence or leads that would have inevitably led to the discovery of the phone's content in a lawful manner."[23] As the Government was not then pursuing any other, lawful warrant, Appellant claims the military judge's findings amount to "speculation and conjecture."[24] This misses the mark.

There is no doubt that the Government, when it erroneously sought a warrant from Judge Baker, already possessed evidence that would have inevitably led to the discovery of the phone's contents in a lawful manner. We know this because the affidavit submitted to the base commander contained the same information originally submitted to Judge Baker. That the base commander, relying on the same information and knowing nothing about the phone's contents, found probable cause and issued the CASS shows that the Government already possessed such evidence at the time the invalid warrant issued.

Appellant also claims that Capt Whiskey's unspecified concerns regarding unlawful command influence [UCI] would have prevented Agent Mike from seeking and obtaining a CASS from Appellant's immediate commander.[25] Appellant argues that this proves the military judge's finding that, but for Judge Baker's error, the Government "would have applied to a commander for authority to search and seize the evidence at issue" was clearly erroneous. This is thin soup. Had Judge Baker correctly denied the warrant application, the choices facing Agent Mike and Capt Whiskey would have been few: (a) resolve the UCI concerns and seek a CASS from Appellant's commander; (b) seek a CASS from an authorized senior commander untainted by the UCI concerns; or (c) simply abandon efforts to seize and search the phone. This third option, given the facts before us, is so improbable as to be absurd. Both of the remaining choices involve obtaining a CASS, inevitably leading to the evidence found on Appellant's phone. Therefore, we do not find the military judge's finding to be clearly erroneous.

Second, Appellant claims that the military judge's application of the inevitable discovery doctrine rests solely on the existence of probable cause in the two affidavits. And probable cause, Appellant rightly states, "cannot rescue

---

[23] Appellant's Br. at 18-19.

[24] Appellant's Br. at 19 (quoting *United States v. Nieto,* 76 M.J. 101, 108 (C.A.A.F. 2017)).

[25] The record contains no details of what the UCI-related concerns were. Besides his conclusory statement, Appellant provides no explanation as to how such unspecified concerns would have limited Agent Mike's options for obtaining a CASS.

evidence obtained via an unlawful search . . . when the government presents no evidence that the police would have obtained a warrant."[26]

The problem with this argument is that the Government *did* present such evidence. Agent Mike's normal procedure was to seek a CASS.[27] And when the Government learned that Judge Baker had quashed the warrant, it immediately sought a CASS. The military judge had much more before him than simply the existence of probable cause.

Finally, Appellant claims that Agent Mike's application for a CASS in August 2022 sheds no light on what he would have done in November 2021. By relying on this fact in applying the inevitable discovery exception, Appellant argues, the military judge was merely speculating as to the "inevitable" piece of the exception. We disagree. That Agent Mike properly applied for and received a valid CASS is significant evidence of what he would have done had Judge Baker declined to sign the warrant. While the military judge did not address the eight-month period between Judge Baker's granting and then quashing the warrant, we find the length of this period of little relevance to the analysis. Under the facts before us, the evidentiary value of Agent Mike seeking the CASS is the same whether Judge Baker quashed the warrant eight minutes or eight months after he issued it. The key fact is that, once Judge Baker did so, Agent Mike immediately sought the CASS.

Based on the entire record, we find the military judge's findings of fact neither speculative nor clearly erroneous. And we hold the military judge's application of the inevitable discovery exception was correct.

## B. The question of whether the good faith exception applies is moot.

As we hold that the military judge did not abuse his discretion in applying the inevitable discovery doctrine, the evidence found on Appellant's phone was properly admitted at trial. No other exception to the exclusionary rule need

---

[26] Appellant's Br. at 19 (quoting *Wicks*, 73 M.J. at 103).

[27] We note that Appellant, when challenging the military judge's application of the good faith exception, makes much of Agent Mike's statements that his normal practice was to seek a CASS and that this was the only instance in his 16-year career that he applied for a warrant. Yet Appellant ignores this fact when arguing that the military judge was merely speculating as to whether the Government would have sought a CASS but for Judge Baker mistakenly signing the warrant. Appellant cannot have it both ways.

apply. Accordingly, we do not decide the question of whether the military judge abused his discretion in applying the good faith exception.

## III. CONCLUSION

After careful consideration of the record and the briefs and arguments of appellate counsel, we have determined that the findings and sentence are correct in law and fact and that no error materially prejudicial to Appellant's substantial rights occurred.[28]

However, we note that the Entry of Judgment does not properly summarize the charges and specifications referred for trial.[29] Although we find no prejudice, Appellant is entitled to have court-martial records that accurately reflect the content of his proceeding.[30] Therefore, we modify the Entry of Judgment and direct that it be included in the record.[31]

The findings and sentence are **AFFIRMED**.

FOR THE COURT:

MARK K. JAMISON
Clerk of Court

---

[28] Articles 59 & 66, UCMJ.

[29] Rule for Courts-Martial (R.C.M.) 1111(b)(1)(A). *See United States v. Wadaa,* 84 M.J. 652 (N-M. Ct. Crim. App. 2024).

[30] *United States v. Crumpley*, 49 M.J. 538, 539 (N-M. Ct. Crim. App. 1998).

[31] R.C.M. 1111(c)(2).

# United States Navy–Marine Corps Court of Criminal Appeals

| | |
|---|---|
| **UNITED STATES** | NMCCA NO. 202300085 |
| v. | **ENTRY**<br>**OF**<br>**JUDGMENT** |
| **David N. CASTRO**<br>**Gunnery Sergeant (E-7)**<br>**U.S. Marine Corps**<br>*Accused* | *As Modified on Appeal*<br><br>**3 January 2025** |

On 12 December 2022, the Accused was tried at Marine Corps Base Camp Pendleton, California, by a general court-martial consisting of officer and enlisted members. Military Judge Douglas C. Hatch presided.

## FINDINGS

The following are the Accused's pleas and the Court's findings to all offenses the convening authority referred to trial:

**Charge I:** **Violation of Article 92, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 892.**

> *Plea:* Not Guilty.
> *Finding:* Guilty.

**Specification:** **Between on or about 1 December 2020 and on or about 22 November 2021, failed to obey Article 1165, U.S. Navy Regulations by wrongfully engaging in an unduly familiar relationship that did not respect the differences in grade or rank with Sergeant A.T., U.S. Marine Corps.**

> *Plea:* Not Guilty.
> *Finding:* Guilty.

**Charge II:** **Violation of Article 90, Uniform Code of Military Justice, 10 U.S.C. § 890.**

> *Plea:* Not Guilty.

*Finding:* Guilty.

| | |
|---|---|
| **Specification:** | **On divers occasions between 4 June 2021 and on or about 22 November 2021, willfully disobeyed a superior commissioned officer by contacting Sergeant A.T., U.S. Marine Corps.** |

*Plea:* Not Guilty.
*Finding:* Guilty.

**Charge III:** **Violation of Article 81, Uniform Code of Military Justice, 10 U.S.C. § 881.**

*Plea:* Not Guilty.
*Finding:* Guilty.

| | |
|---|---|
| **Specification:** | **Between on or about 15 July 2021 and on or about 18 November 2021, conspire with Sergeant A.T., U.S. Marine Corps, to obstruct justice.** |

*Plea:* Not Guilty.
*Finding:* Guilty.

**Charge IV:** **Violation of Article 131b, Uniform Code of Military Justice, 10 U.S.C. § 931b.**

*Plea:* Not Guilty.
*Finding:* Guilty.

| | |
|---|---|
| **Specification:** | **On divers occasions between on or about 6 November 2021 and on or about 18 November 2021, obstruct justice by wrongfully influencing the testimony of a potential witness.** |

*Plea:* Not Guilty.
*Finding:* Guilty.

## SENTENCE

On 12 December 2022, the members sentenced Gunnery Sergeant Castro to the following:

**Hard labor without confinement for three months.**

**Restriction to the limits of quarters for two months.**

**Forfeiture of $3,318 pay per month for six months.**

**A reprimand.**

On 6 February 2023, the Convening Authority approved Gunnery Sergeant Castro's request to disapprove the adjudged restriction and Gunnery Sergeant Castro's request to reduce the adjudged forfeitures. The Convening Authority denied Gunnery Sergeant Castro's remaining requests and approved the following sentence:

**Hard labor without confinement for two months.**

**Forfeiture of $2,000 pay per month for three months.**

**A reprimand.**

FOR THE COURT:

MARK K. JAMISON
Clerk of Court