*This opinion is subject to administrative correction before final disposition.*

# United States Navy–Marine Corps Court of Criminal Appeals

Before
HOLIFIELD, KIRKBY, and GANNON
Appellate Military Judges

_____

**UNITED STATES**
*Appellant*

**v.**

**Anderson A. IXCOLGONZALEZ**
Lance Corporal (E-3), U.S. Marine Corps
*Appellee*

**No. 202400253**

_____

Decided: 30 April 2025

Appeal by the United States Pursuant to Article 62, Uniform Code of
Military Justice

Military Judge:
R. C. Lipton

Before a general court-martial convened at Marine Corps Base Lejeune,
North Carolina.

For Appellant:
*Lieutenant Lan T. Nguyen, JAGC, USN* (on brief)
*Lieutenant Commander James P. Wu Zhu, JAGC, USN* (argued)

For Appellee:
*Lieutenant Meggie C. Kane-Cruz, JAGC, USN* (on brief and argued)

21 May 2025: Administrative Correction to reflect the Appellate Government
Counsel who argued on behalf of the United States

Senior Judge KIRKBY delivered the opinion of the Court, in which Chief Judge HOLIFIELD joins, and from which Judge GANNON dissents.

———————————

**This opinion does not serve as binding precedent, but
may be cited as persuasive authority under
NMCCA Rule of Appellate Procedure 30.2.**

———————————

KIRKBY, Senior Judge:

Appellee is charged with possession, distribution, receipt, and solicitation to distribute child pornography in violation of Articles 82 and 134 of the Uniform Code of Military Justice [UCMJ].[1]

The military judge granted Appellee's motion to suppress evidence. The Government filed a timely interlocutory appeal pursuant to Article 62, UCMJ, on the issue of whether the military judge abused his discretion when he suppressed evidence discovered in a search under a command authorized search and seizure. We hold that the military judge did not abuse his discretion.

## I. BACKGROUND

Agents from the Naval Criminal Investigative Service [NCIS] seized numerous devices belonging to Appellee pursuant to a command authorized search and seizure [CASS]. The devices were sent to the Department of Defense Cyber Crimes Center Cyber Forensic Laboratory [DC3]. The devices were forensically analyzed and found to contain evidence related to the charged offenses. At trial, Appellee moved to suppress the totality of the information related to the search. The Government opposed the motion and the military judge heard argument on 29 May 2024. On 27 June 2024, the military judge granted the defense motion based on Fourth Amendment grounds.[2] This appeal followed.

The authority to review a government appeal, as in this case, is provided by Article 62 which subjects certain decisions made by a military judge to an

---

[1] 10 U.S.C. § 880.

[2] App. Ex. XVI.

interlocutory government appeal.[3] Article 62 in relevant part, authorizes the government to appeal "[a]n order or ruling which excludes evidence that is substantial proof of a fact material in the proceeding."[4]

## II. STANDARD OF REVIEW

The Fourth Amendment guarantees "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."[5] It protects against unreasonable searches and seizures by requiring the issuance of warrants supported by probable cause. The military has implemented rules related to searches Military Rules of Evidence [Mil. R. Evid.] 311 through 317, Manual for Courts-Martial. Those rules reflect the limits which military society, speaking through its Commander-in-Chief, is willing to place upon the protections afforded under the Fourth Amendment in a military context.[6]

Military Rule of Evidence 315 deals with *probable cause searches*, and Mil. R. Evid. 315(a) provides in part that "[e]vidence obtained from reasonable searches conducted pursuant to a search warrant or search authorization. . . is admissible at trial when relevant and not otherwise inadmissible under these rules or the Constitution of the United States. . . ." Established precedent in the realm of Fourth Amendment search and seizure requires multiple steps in our analysis. First we look at whether the instrument, in this case the CASS, is facially valid. That is, does it meet the particularity requirement of the Fourth Amendment.[7] Second, we look at the CASS to see if, in the absence of facial particularity, it incorporates additional documentation that meets the requirement.[8] Third, if neither of these steps is satisfied, we ask if the good faith exception applies, in other words, was the Agent objectively acting in good faith in relying on an otherwise deficient search authorization.[9] Finally, if the good faith exception is not applicable, we look to the exclusionary rule, that is,

---

[3] 10 U.S.C.S. § 862

[4] 10 U.S.C. § 862(a)(1)(B).

[5] U.S. CONST. amend. IV.

[6] *United States v. Nieto*, 76 M.J. 101, 106 (C.A.A.F. 2017).

[7] "[N]o Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized." U.S. CONST. amend. IV.

[8] *Groh v. Ramirez*, 540 U.S. 551, 558 (2004).

[9] *United States v. White*, 80 M.J. 322 (C.A.A.F. 2020).

whether the application of the exclusionary rule will meaningfully deter law enforcement conduct that violated the Fourth Amendment requirements.[10]

We review a military judge's decision on a motion to suppress evidence for an abuse of discretion.[11] A military judge abuses his or her discretion when: (1) the military judge predicates a ruling on findings of fact that are not supported by the evidence of record; (2) the military judge uses incorrect legal principles; (3) the military judge applies correct legal principles to the facts in a way that is clearly unreasonable; or (4) the military judge fails to consider important facts.[12]

In conducting an abuse of discretion analysis we are bound by the military judge's findings of fact unless they are clearly erroneous and review conclusions of law de novo.[13] "[W]e consider the evidence in the light most favorable to the prevailing party" – in this case Appellee.[14]

## III. DISCUSSION

### A. The CASS was not facially valid.

The Fourth Amendment requires that a warrant itself particularly describe the places to be searched and the items to be seized; having this description in the warrant's supporting documents does not suffice.[15] Military Rule of Evidence 315(a)'s Constitutional compliance requirement relates to both warrants and CASS's. Here, the CASS states in relevant part:

> **Affidavit(s) having been made before me by** Special Agent
> [Lima]

---

[10] *United States v. Wicks*, 73 M.J. 93, 103 (C.A.A.F. 2014).

[11] *United States v. Commisso*, 76 M.J. 315, 322 (C.A.A.F. 2017) (citing *United States v. Ellis*, 68 M.J. 341, 344 (C.A.A.F. 2010) and *United States v. Solomon*, 72 M.J. 176 (C.A.A.F. 2013)).

[12] *Id.*

[13] *United States v. Keefauver*, 74 M.J. 230, 233 (C.A.A.F. 2015).

[14] *Id.*

[15] *See Massachusetts v. Sheppard*, 468 U.S. 981, 988, n. 5 (1984) ("[A] warrant that fails to conform to the particularity requirement of the Fourth Amendment is unconstitutional"); *see also United States v. Stefonek*, 179 F.3d 1030, 1033 (7th Cir. 1999) ("The Fourth Amendment requires that the warrant particularly describe the things to be seized, not the papers presented to the judicial officer . . . asked to issue the warrant"). And for good reason: "The presence of a search warrant serves a high function," *McDonald v. United States*, 335 U.S. 451, 455 (1948).

**That there is reason to believe that on the person of and/or on the premises known as:** Digital devices belonging to LCpl Anderson IXCOLGONZALEZ, USMC and Barracks FC574, Room 301, Camp Lejeune, NC

**Which is/are under my jurisdiction,**

**There is now being concealed property, namely:**

Evidence of violations of Article 134 (Possession, receiving, or viewing of child pornography) and Article 134 (Distribution of Child Pornography) of the Uniform Code of Military Justice.

**I am satisfied that there is probable cause to believe that the property so described is being concealed on the person and/or premises above described and that grounds for application for issuance of a command authorized search exist as stated in the supporting affidavit(s).**[16]

The military judge found the CASS was "void of any particularity concerning what specific locations within those digital devices law enforcement was permitted to search."[17] Additionally, the military judge found "constitutionally problematic the lack of sufficient particularity concerning the things to be searched."[18] And, while the military judge focused on the lack of specificity within the targeted digital devices, we find a similar issue with the generality of "digital devices" as far as things to be seized.

The Court of Appeals for the Armed Forces [CAAF] has seemingly adopted the Tenth Circuit Court of Appeals' rationale[19] that warrants must use "as much specificity as the government's knowledge and circumstances allow."[20] Applying a reasonableness standard to Fourth Amendment searches of electronic devices the CAAF looks to "searches. . . expansive enough to allow investigators access to places where incriminating materials may be hidden, yet not so broad that they become the sort of free-for-all general searches the

---

[16] The Government conceded at oral argument that the bolded sections of the CASS were boilerplate.

[17] App. Ex. XVI.

[18] App. Ex. XVI.

[19] *United States v. Richards*, 76 M.J. 365 (C.A.A.F. 2017) (citing *United States v. Riccardi*, 405 F.3d 852, 862 (10th Cir. 2005)).

[20] *Riccardi*, 405 F.3d at 862 (quoting *United States v. Leary*, 846 F.2d 592, 600 (10th Cir. 1988)).

Fourth Amendment was designed to prevent."[21]   In *United States v. Richards* the CAAF explained that, rather than requiring an exact location of information within electronic devices, "the proper metric of sufficient specificity is whether it was reasonable to provide a more specific description" of the location.[22]

Under a plain reading of this CASS, the property sought was evidence of violations of Article 134 and NCIS agents were authorized to search "digital devices" on Appellee or at the premises listed. We disagree with the Government's contention that "digital devices" as used in the CASS is limited in scope. The Government was unable to contextually define "digital devices," however, one reasonable definition is:

> an electronic device that can create, generate, send, share, communicate, receive, store, display, or process information, and such electronic devices shall include, but not limited to, desktops, laptops, tablets, peripherals, servers, mobile telephones, smartphones, and any similar storage device which currently exists or may exist as technology develops or such comparable items as technology develops.[23]

Both under this definition and in lay terms, "digital devices" include things like smartphones, tablets, personal computers, gaming consoles, digital clocks, smart TVs, GPS devices, and smart watches. As technology has advanced, so has our understanding of what constitutes a digital device. In 2024 it could potentially include printers, keyboards, a computer mouse, smart home devices, washing machines, and refrigerators. Therefore, describing places to be searched under the general term "digital devices" is far from particular. We concede the military judge took a different view of this issue and for the purpose of this Article 62 review do not further consider it.

The military judge based his decision on the lack of locations of information on digital devices. Given the detailed information provided in the affidavit, which included specific files within the Snapchat application, presence of the email address and Snapchat account name,  as discussed by the military judge,

---

[21] *Richards*, 76 M.J. at 370.

[22] 76 M.J. at 369 (quoting *United States v. Richards*, 659 F.3d 527, 541 (6th Cir. 2011) (citations omitted)).

[23] *Digital device definition*, Law Insider, https://www.lawinsider.com/dictionary/digital-device (last visited Apr. 23, 2025).

it was not unreasonable for SA Lima to have incorporated at least some of the same detail in the CASS. [24]

Ultimately, we believe the military judge correctly applied the law to the pertinent facts of this case, "[b]y listing 'digital devices'. . . without qualification. . . [means] the CASS is void of any particularity concerning the specific locations within those digital devices law enforcement was permitted to search."[25] We find he did not abuse his discretion in finding the CASS lacked sufficient particularity.

## B. The affidavit was not incorporated by reference into the CASS.

In the absence of facial specificity, if the Government can otherwise show the CASS incorporated by reference an affidavit that described the particular items to be searched then the Fourth Amendment would be satisfied.[26] Courts have been clear: the Fourth Amendment requires particularity, not the supporting documents.[27] The fact that the *application* adequately described the "things to be seized" does not save it from its facial invalidity.[28] It has long been held that "[t]he presence of a search warrant serves a high function,"[29] and that high function is not necessarily vindicated when some other document, somewhere, says something about the objects of the search, but the contents of that document are neither known to the person whose home is being searched nor available for her inspection.[30] The Supreme Court has never declared that the Fourth Amendment prohibits a warrant from cross-referencing other documents. In fact, the Court recognizes that "most Courts of Appeals have held that a court may construe a warrant with reference to a supporting application or affidavit if the warrant uses appropriate words of incorporation, and if the supporting document accompanies the warrant.[31]

---

[24] App. Ex. XVI.

[25] App. Ex. XVI. at 6.

[26] *Groh*, 540 U.S. at 557.

[27] *Id.*

[28] *Sheppard*, 468 U.S. at 988.

[29] *McDonald v. United States*, 335 U.S. 451, 455 (1948).

[30] *Groh*, 540 U.S. at 557.

[31] *Groh*, 540 U.S. 557 (citing *United States v. McGrew*, 122 F.3d 847, 849–850 (9th Cir. 1997); *United States v. Williamson*, 1 F.3d 1134, 1136, n. 1 (10th Cir. 1993); *United States v. Blakeney*, 942 F.2d 1001, 1025–26 (6th Cir.1991); *United States v. Maxwell*,

Here the Government asks us to find incorporation akin to that found in *Baranski v. Fifteen Unknown Agents of the BATF.*[32] However, the words of incorporation "See Attached Affidavit" relied upon in *Baranski* are conspicuously absent here.[33] As the *Baranski* court points out "Consistent with *Groh*, all of the courts of appeals (save the Federal Circuit) have permitted warrants to cross-reference supporting affidavits and to satisfy the particularity requirement through an incorporated and attached document."[34] For an attached affidavit to be properly incorporated into a warrant, the warrant must contain "deliberate and unequivocal language of incorporation."[35] "Language in a warrant that simply references an underlying affidavit does not incorporate the affidavit so as to allow the documents together to satisfy the particularity requirement."[36]

Here, the CASS references the affidavit twice; first stating "**Affidavit(s) having been made before me by** Special Agent [Lima]," and second in the boiler plate probable cause paragraph. We agree with the military judge that "the search authorization did nothing to actually incorporate the specificity within the supporting affidavit."[37]

The Eighth Circuit Court of Appeals dealt specifically with this first category in *United States v. Strand,* where the warrant in question stated "affidavit(s) [have] been made" and that "grounds for application for issuance of the

---

920 F.2d 1028, 1031 (D.C. Cir. 1990); *United States v. Curry*, 911 F.2d 72, 76–77 (8th Cir. 1990); *United States v. Roche*, 614 F.2d 6, 8 (1st Cir. 1980)).

[32] 452 F.3d 433, 443 (2006).

[33] *Id.* at 456.

[34] *Id.* at 440.

[35] *United States v. Waker*, 534 F.3d 168, 172–73, n.2 (2d Cir. 2008) (per curiam) (finding supporting affidavit incorporated by reference in warrant where it was attached to warrant, warrant stated that supporting affidavit "is incorporated herein by reference," and magistrate had "initialed the [relevant] portion of the attached affidavit" (internal quotation marks omitted)); *see also Groh*, 540 U.S. at 557–58.

[36] *See Groh*, 540 U.S. at 554–55 (concluding that, although warrant referenced affidavit insofar as it "recite[d] that the Magistrate was satisfied the affidavit established probable cause," warrant "did not incorporate by reference" list of items to be seized that was contained in application); *United States v. George*, 975 F.2d 72, 76 (2d Cir. 1992) (holding "recitation in . . . warrant that it [was] issued upon the basis of an application and affidavit" insufficient to incorporate affidavit by reference (internal quotation marks omitted)).

[37] App. Ex. XVI at 13.

search warrant exist as stated in the supporting affidavit(s)."[38] There the court found no incorporation sufficient to meet Fourth Amendment requirements.[39]

In *United States v. Maxwell* the D.C. Circuit Court of Appeals addressed the second category of incorporation in a probable cause statement.[40] There the court found that "something more is required than a boilerplate statement that the affidavit or affidavits presented to the magistrate constitute probable cause for issuing the warrant."[41]

We join the Eighth Circuit and the D.C. Circuit Court of Appeals on these respective points and agree with the military judge that there was no actual incorporation in this case.

The military judge noted our holding in *United States v. Armendariz,* wherein this court adopted the two-part test from *Groh.* The military judge further noted that the CAAF reversed that decision on other grounds without reaching our analysis concerning incorporation under *Groh.* While *Groh* is distinguishable from the case at hand as it deals with law enforcement immunity relating to a defective search warrant rather than suppression of a CASS; we find nothing in Mil. R. Evid. 315 that exempts CASS's from the particularity requirement either facially or by incorporation.

The military judge found, based on the testimony presented, that the affidavit did not accompany the CASS in this case, insinuating simultaneous delivery of supporting documents with search authorization may be a means of incorporation. We note that Mil. R. Evid. 315 permits a determination of probable cause based on "oral statements. . . via telephone. . ." and in *United States v. Grubbs*, the Supreme Court, after *Groh*, sought to clarify the issue of whether a warrant must be presented to a property owner.[42] The Court opined that the argument that property owners must be informed of warrant triggering conditions "assumes that the executing officer must present the property owner with a copy of the warrant before conducting his search. However, neither the Fourth Amendment nor Federal Rule of Criminal Procedure 41 imposes such a requirement."[43] Additionally, the Court stated, "the absence of a constitutional requirement that the warrant be exhibited at the outset of the

---

[38] 761 F.2d 449, 453 (8th Cir. 1985).

[39] *Id.*

[40] 920 F.2d 1028 (D.C. Cir. 1990).

[41] *Id.* at 1032.

[42] *United States v. Grubbs*, 547 U.S. 90, 98–99 (2006).

[43] *Id.* at 98  (citing *Groh*, 540 U.S. at 562).

search, or indeed until the search has ended, is . . . evidence that the requirement of particular description does not protect an interest in monitoring searches."[44] Conceivably therefore probable cause for a CASS could be based on a telephone call and a search conducted without a written document. We leave for another day the implication of this when the CASS is challenged.

In the case before us we find the military judge did not abuse his discretion in finding that this written CASS did not incorporate the Affidavit by reference.

The dissent focuses on the difference between a CASS and a warrant to distinguish case law. We see no such daylight between these documents in this situation. While Mil. R. Evid. 315(f) describes the *Basis for Search Authorizations*, it does not excuse the specificity requirement discussed in section II.A above – a requirement that can be met by specific words of incorporation. As in *Groh*, the issue here is not probable cause, it is the failure to meet the Fourth Amendment requirements for search and seizure.[45]

## C. The military judge's decision not to apply the good faith exception was reasonable.

The "good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal in light of all of the circumstances."[46] These circumstances frequently include a particular officer's knowledge and experience, but that does not make the test any more subjective than the one for probable cause, which looks to an officer's knowledge and experience, but not his subjective intent.

Without exception, the cases relied on by the Government involve law enforcement officers' good faith reliance on the acts, or inaction, of others. Indeed Mil. R. Evid. 311(c)(3)(A) and (B) relate to the good faith pertaining to the individual issuing the authorization. Military Rule of Evidence 311(c)(3)(C) says unlawfully obtained evidence may be used if "the officials seeking and executing the authorization or warrant reasonably and with good faith relied on the issuance of the authorization or warrant."[47] As the CAAF held in *United States v. Carter*, law enforcement agents do not act in good faith if they "know that

---

[44] *Id*. at 99 (citing *United States v. Stefonek*, 179 F.3d 1030 (9th Cir. 1999)).

[45] We note that our superior court has stated, "A *search authorization*…must adhere to the standards of the Fourth Amendment of the Constitution" *Richards*, 76 M.J. at 369 (emphasis added).

[46] *Herring v. United States*, 555 U.S. 135, 145 (quoting *United States v. Leon*, 468 U.S. 897 (1984) (internal quotations omitted)).

[47] Mil. R. Evid. 311(c)(3)(C).

the magistrate merely 'rubber stamped' their request, or when the warrant is facially defective."[48]

In *United States v. Leon* the Supreme Court listed four circumstances where the "good faith" exception would not apply.[49] The last of these, is applicable here: Facially deficient warrant.[50] Where the warrant is "so facially deficient -- i.e., in failing to particularize the place to be searched or the things to be seized -- that the executing officers cannot reasonably presume it to be valid."[51]

In *Carter* the CAAF analyzed Mil. R. Evid. 311(b)(3) – the current Mil. R. Evid. 311(c)(3) – and found the final circumstance satisfied where:

> [The issuing authority] did not rubber stamp the request. Instead, he carefully reviewed it, asked for additional information, and reduced the scope of the search authorization before approving it. Moreover, the search authorization was not facially deficient.[52]

The facts of *Carter* differ from those of the case at hand. Here, SA Lima prepared, presented and executed the CASS; in *Carter* a different agent presented the authorization than the agent who executed it. In *Carter* the authorizing official "carefully reviewed it, asked for additional information, and reduced the scope of the search authorization before approving it."[53] We can make no assumption of the same based on the record before us. There is no indication related to the time or degree to which the authorizing official took in reviewing the affidavit. There is no evidence on the CASS before us or in the record that the authorizing official did anything other than complete the signature block.[54] Where the court in *Carter* found the authorization there facially sufficient, we do not find the same here. As discussed above, the CASS does not adequately specify either the device or the location within the device as the Fourth Amendment requires.

---

[48] 54 M.J. 414, 421 (C.A.A.F. 2001).

[49] *United States v. Leon*, 468 U.S. 897 (1984)

[50] *Id.* at 923.

[51] *Id.* (citation omitted).

[52] *United States v. Carter*, 54 M.J.414, 422 (C.A.A.F. 2001).

[53] *Id.*

[54] Both the CASS and Affidavit are signed by the authorizing official.

Ultimately, we find the military judge's decision, with regard to the good faith exception, was not unreasonable. The Fourth Amendment establishes requirements for the government to satisfy when it wishes to search and seize the person or property of its citizens, including members of the military. While reasonable minds may have reached different conclusions on one or more of the steps taken to analyze the Fourth Amendment issue before us, we find the military judge neither abused nor was clearly unreasonable in the exercise of his discretion.

## D. Application of the Exclusionary Rule is Appropriate.

It has been long established that "when evidence is obtained in violation of the Fourth Amendment, the judicially developed exclusionary rule usually precludes its use in a criminal proceeding against the victim of the illegal search and seizure."[55] The Supreme Court has stressed that the "prime purpose" of the exclusionary rule "is to deter future unlawful police conduct and thereby effectuate the guarantee of the Fourth Amendment against unreasonable searches and seizures."[56] Application of the exclusionary rule "is neither intended nor able to 'cure the invasion of the defendant's rights which he has already suffered.'"[57] Rather, the rule "operates as 'a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the party aggrieved.'"[58] In *Illinois v. Krull* the Supreme Court elaborated that "evidence should be suppressed 'only if it can be said that the law enforcement officer had knowledge, or may properly be charged with knowledge, that the search was unconstitutional under the Fourth Amendment.'"[59]

As the CAAF explained in *United States v. Lattin*:

> Although the Fourth Amendment "contains no provision expressly precluding the use of evidence obtained in violation of its commands," the Supreme Court long ago created an exclusionary rule that forbids the use of improperly obtained evidence at trial. The Supreme Court has explained that this exclusionary rule is "designed to safeguard Fourth Amendment rights generally

---

[55] *Illinois v. Krull*, 480 U.S. 340, 347 (1987) (citing *Weeks v. United States*, 232 U.S. 383 (1914); and *Mapp v. Ohio*, 367 U.S. 643 (1961)).

[56] *United States v. Calandra*, 414 U.S. 338, 347 (1974).

[57] *Leon*, 468 U.S. at 906 (quoting *Stone v. Powell*, 428 U.S. 465, 540 (1976) (White, J., dissenting)).

[58] *Leon*, 468 U.S. at 906 (quoting *United States v. Calandra*, 414 U.S. at 348).

[59] 480 U.S. 340, 348–49 (quoting *United States v. Peltier*, 422 U.S. 531(1975)).

through its deterrent effect." In other words, if the government cannot use evidence that the police obtained by violating the Fourth Amendment, the police will have an incentive not to violate the Fourth Amendment when the benefits of deterrence outweigh the costs.[60]

The President has codified the exclusionary rule in Mil. R. Evid. 311(a), which provides:

> (a) Evidence obtained as a result of an unlawful search or seizure made by a person acting in a governmental capacity is inadmissible against the accused if:
>
>> (1) the accused makes a timely motion to suppress or an objection to the evidence under this rule;
>>
>> (2) the accused had a reasonable expectation of privacy in the person, place, or property searched; the accused had a legitimate interest in the property or evidence seized when challenging a seizure; or the accused would otherwise have grounds to object to the search or seizure under the Constitution of the United States as applied to members of the Armed Forces; and
>>
>> (3) exclusion of the evidence results in appreciable deterrence of future unlawful searches or seizures and the benefits of such deterrence outweigh the costs to the justice system.

In *Lattin,* the CAAF, in reviewing the application of the exclusionary rule, determined:

> [W]e will not review the military judge's determinations with respect to the appreciable deterrence test or balancing test merely for clear error. Instead, we think that a less deferential standard should apply and that the question is whether the military judge's assessment of these matters was a "clearly unreasonable" exercise of discretion.[61]

Assessing whether the military judge was clearly unreasonable in his exercise of discretion we look at his ruling and the record before us.[62] Appellee

---

[60] 83 M.J. 192, 197 (C.A.A.F. 2023) (internal citations omitted).

[61] *Id.* at 198.

[62] App. Ex. XVI.

made a timely motion to suppress the evidence at hand.[63] There is no argument from the Government that Appellee did not have a reasonable expectation of privacy in the items recovered during the search. Thus Mil. R. Evid. 311(a)(1) and (2) are met. The military judge, fully understood the impact on the Government's case at trial, notably that "by suppressing the evidence recovered on the accused's electronic storage devices. . . the government will be unable to offer evidence that [Appellee] possessed approximately 526 apparent images of child pornography. . . and evidence of 63 telegram messages associated with [Appellee's] receipt and distribution of child pornography."[64] He assessed the CASS and the surrounding circumstances. He concluded that the CASS authorizing the search of "digital devices" was prepared, presented and executed by SA Lima was "conclusively invalidated by [a] substantial failure to specify. . . ."[65] The military judge comprehensively analyzed the language of the CASS and of the affidavit, and his ruling demonstrates he reasonably reviewed the scope of the CASS. This included both the plain language and the impact of the documents, even on DC3. Therein the military judge noted that DC3 seized information beyond the scope of SA Lima's request based on its facially broad authorization. We therefore conclude that the military judge was not clearly unreasonable in his decision in applying the exclusionary rule.

In *Herring v. United States,* the Supreme Court stated that "[t]o trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system. As laid out in the case law, the exclusionary rule serves to deter deliberate, reckless, or grossly negligent conduct, or in some circumstances recurring or systemic negligence."[66]

In finding the military judge's assessment of the exclusionary rule reasonable in this case, we note that the CASS is primarily boilerplate. While there is no prohibition on using boilerplate language and, when used correctly, it may in fact guide appropriate compliance with Fourth Amendment requirements, its habitual use without periodic review can breed systematic negligence. We note the CASS in this case appears to be on a form produced more

---

[63] While the limited record before us on this Article 62, appeal contains no specific timelines within the case, we understand the government's lack of objection on this point to be acquiescence that Appellee met this requirement.

[64] App. Ex. XVI.

[65] App. Ex. XVI.

[66] 555 U.S. at 144.

than 25 years ago.[67] Much has changed in the last quarter century, including controlling case law on Fourth Amendment search and seizure. It is reasonable, as the military judge determined, for government agents to understand basic requirements of specificity and incorporation which are not "uniquely-nuanced or hyper-technical" aspects of the law.[68]

## IV. CONCLUSION

For the reasons discussed above, the appeal of the United States pursuant to Article 62 is **DENIED**. We return the record of trial to the military judge for action consistent with this opinion.

---

[67] The document naming convention of App. Ex. X indicates NCIS 5508/7 (2/1999).

[68] App. Ex. XVI at 17.

GANNON, J. (dissenting):

I respectfully dissent. For the reasons discussed below, I would find that the military judge erred in suppressing the evidence in this case by failing to consider any of the information contained in the supporting affidavit. I would remand this case back to the military judge for a determination as to whether the subject search authorization, coupled with the supporting affidavit, sufficiently formed the basis for the authorizing official's probable cause determination pursuant to Military Rule of Evidence 315(f)(2)(A).[1]

## I. BACKGROUND

This case is before us on an interlocutory appeal pursuant to Article 62(a)(1)(B), Uniform Code of Military Justice [UCMJ]. Appellee is charged with solicitation, possession, distribution, and receipt of child pornography, in violation of Articles 82 and 134, UCMJ.[2]

In January of 2022, the National Center for Missing and Exploited Children [NCMEC] received a "CyberTipline" report from Snapchat. The CyberTipline reported that a user had uploaded what appeared to be child pornography to Snapchat. The North Carolina Bureau of Investigations and the Naval Criminal Investigative Service [NICS] initiated an investigation. As a result of the ensuing investigation, Appellee was identified as having allegedly uploaded the child sexual abusive material to Snapchat.

On 26 May 2022, a military judge granted a government-requested search of Appellee's Snapchat account pursuant to Article 30a, UCMJ, and Rule for Courts-Martial [R.C.M.] 703A.[3] The search of Appellee's Snapchat account yielded four videos of "apparent minors engaged in sexual activity."[4]

Armed with the discovery of the four contraband videos, NCIS Special Agent Lima approached Appellee's commanding officer and sought a command authorization for search and seizure [CASS] of "[a]ny and all computer, mobile

---

[1] Because I would find that the military judge erred in not considering the information in the supporting affidavit for purposes of whether there was probable cause to search Appellee's digital devices, I do not review, and express no opinion, as to the military judge's analysis of the good faith exception to the exclusionary rule. Additionally, I express no opinion as to the military judge's determination that excluding the evidence will result in appreciable deterrence in future cases, and that the benefit of deterrence outweighs the costs to the justice system. Mil. R. Evid. 311(a)(3).

[2] 10 U.S.C. §§ 882, 934.

[3] 10 U.S.C. § 830a.

[4] App. Ex. X at 8.

or storage media devices capable of storing digital files," located in Appellee's barracks room, and on his person.[5]

On 17 August 2022, Special Agent Lima presented the commanding officer with a CASS and a supporting affidavit. The CASS was a one-page document titled: "Command Authorization for Search and Seizure."[6] The supporting affidavit consisted of a cover page and an 11-page probable cause affidavit titled: "Attachment A."[7]

The CASS contains the following language:

> I am satisfied that there is probable cause to believe that the property so described is being concealed on the person and/or premises above described and that grounds for application for issuance of a command authorized search exist as stated in the supporting affidavit(s).[8]

The commanding officer signed and dated the CASS.

The commanding officer also signed and dated the coversheet to "Attachment A" (the sworn affidavit). Above the commanding officer's signature, the coversheet to Attachment A contains the following language: "[s]worn to before me, and subscribed in my presence, this 17th day of August, 2022."[9]

The coversheet to Attachment A contains the following language: "[t]he facts and circumstances known to me tending to establish the foregoing grounds for authorization to search and seize, including comments demonstrating the reliability of the information and/or informant, are as follows: See Attachment A."[63]

The commanding officer also signed and dated the last page of "Attachment A."[10]

Agents from NCIS subsequently seized several digital devices from Appellee's person and barracks room. A search of Appellee's phone yielded evidence supporting the charged offenses.

---

[5] App. Ex. X at 11.

[6] App. Ex. X at 13.

[7] App. Ex. X at 1.

[8] App. Ex. X at 13.

[9] App. Ex. X at 1.

[10] App. Ex. X at 12.

Appellee moved to suppress all evidence from his digital devices seized pursuant to the CASS. Later, at an Article 39(a), UCMJ session, the military judge received evidence and heard argument on Appellee's suppression motion.[11]

On 27 June 2024, the military judge issued a written ruling granting the Appellee's motion to suppress. In his ruling, the military judge held that: "the 17 August 2022 search authorization is facially deficient due to its failure to particularly describe the places to be searched or the things to be seized."[12] The military judge evaluated the CASS in isolation from the 11-page supporting affidavit in finding that the CASS, on its own, failed to satisfy the Fourth Amendment's particularity requirement.[13] The military judge relied on the Supreme Court's decision in *Groh v. Ramirez* in finding that the CASS lacked "sufficient words of incorporation" to consider the CASS and the supporting affidavit together in assessing whether the package, as a whole, satisfied the particularly requirement of the Fourth Amendment.

## II. DISCUSSION

Appellant argues that the military judge abused his discretion in suppressing the evidence seized as a result of the CASS of 17 August 2022. I agree.

I respectfully depart from my colleagues' analysis in Section III.B of the majority opinion where the majority upholds the military judge's finding that a search authorization must include "appropriate words of incorporation" in order for a reviewing official to consider a supporting affidavit in conjunction with the CASS in assessing whether together, the supporting affidavit and the CASS, collectively satisfy the Constitution's particularity requirement.[14]

In order for the Government to prevail on an interlocutory appeal, we must find that the military judge abused his discretion.[15] It is an abuse of discretion if the military judge uses incorrect legal principles.[16] In an appeal under Article 62 we review the evidence in "a light most favorable to the part that prevailed below."[17]

---

[11] R. at 1.

[12] App. Ex. XVI at 6.

[13] App. Ex. XVI at 13.

[14] *Ante* at 7–10.

[15] *United States v. Shelby*, 84 M.J. 639 (N-M. Ct. Crim. App. 2024), *aff'd*, __ M.J. __, 2025 CAAF LEXIS 64 (C.A.A.F. Jan. 28, 2025).

[16] *Id.*

[17] *Id.*

I would find that the military judge erred in that he applied *Groh's* "appropriate words of incorporation" requirement to a CASS and did not consider, or analyze Military Rule of Evidence 315. In *Groh*, the Supreme Court analyzed a search <u>warrant</u>, not a search <u>authorization</u>.[18] In applying *Groh's* "appropriate words of incorporation" requirement to the CASS at issue here, the military judge misapprehended the distinction between a search authorization and a search warrant.

The military judge's conflation of the terms "search warrant" and "search authorization" is understandable. In the realm of Fourth Amendment jurisprudence, institutionally, we have a tendency to look to Article III courts for guidance and precedential authority.[19] However, Article III courts do not have an analogy to the search authorization and consequently, all persuasive authority we derive from our learned colleagues on the Federal bench is limited to their analysis of search warrants, not search authorizations. Federal district courts would not consult the military rules of evidence governing search authorizations when assessing a search warrant. Nor should they. We must.

Military Rule of Evidence 315(b)(1) defines a "search authorization," i.e., a CASS, as "express permission, written or oral, issued by competent military authority, to search a person or an area for specified property or evidence, or for a specific person, and to seize such property, evidence or person."[20] Rule 315(b)(2) defines a "search warrant" as an "express permission to search and seize issued by competent civilian authority or under R.C.M. 703A."[21]

This distinction makes sense. In military practice, the commander, where properly empowered by law, enjoys the authority to authorize searches of places and persons under the commander's control.[22] This unique aspect of military justice, where non-legally trained personnel issue search authorizations,

---

[18] *Groh v. Ramirez*, 540 U.S. 551, 553 (2004).

[19] This is not to imply that it is inappropriate to look to Article III courts for guidance and persuasive analysis in the realm of the Fourth Amendment. In fact, there is vast overlap between courts-martial and Article III courts in this area, i.e., the exclusionary rule. However, in areas where military law contains unique features, we must be careful to acknowledge the differences between our practice and that of the Federal Bench.

[20] Mil. R. Evid. 315(b)(1).

[21] Mil. R. Evid. 315(b)(2).

[22] Mil. R. Evid. 315(d)(1).

is central to the nature and scope of the military justice system.[23] We rely on non-legally trained personnel and temporary courts in a global operational environment, to uphold the good order and discipline of the armed forces in the execution of the foreign policy of the United States. In fact, within the context of the military rules of evidence, in Section V, Privileges, both the drafters of the UCMJ and the Court of Appeals for the Armed Forces [CAAF] have noted that, "[u]nlike the Article III court system, which is conducted almost entirely by attorneys functioning in conjunction with permanent courts in fixed locations, the military criminal legal system is characterized by its dependence upon large numbers of laymen, temporary courts, and inherent geographical and personnel instability due to the worldwide deployment of military personnel. This is particularly true because of the significant number of non-lawyers involved in the military criminal legal system."[24] The need for clarity is especially acute in the area of search and seizure because non-lawyer commanders are regularly called upon to authorize searches and seizures in areas they control, and over personnel they command.

I would specifically reject any requirement that a search authorization, as opposed to a search warrant, must contain "appropriate words of incorporation" for a trial court to consider the supporting affidavit in conjunction with the CASS in determining whether the CASS complies with the Fourth Amendment. Instead, I would simply look to Mil. R. Evid. 315(f)(2) and assess whether the supporting information was "communicated" to the official authorizing the CASS.

The Supreme Court has long recognized that the President may promulgate rules of evidence for the military so long as those rules are not arbitrary or disproportionate to the purposes they are designed to serve.[25] The purpose of the military rules of evidence is to provide predictability and certainty through the drafting of specific rules governing the admissibility of evidence and procedure at courts-martial.[26]

---

[23] Drafters Analysis of Mil. R. Evid. 315(b), Manual, *supra* (2016 ed.) at A22–32. "Definitions: Rule 315(b)(1) defines an "authorization to search" as an express permission to search, issued by proper military authority whether commander or judge. As such, it replaces "search warrant" which is used in the Rules only when referring to a permission to search given by proper civilian authority. The change in terminology reflects the unique nature of the armed forces and the role played by commanders."

[24] Drafters Analysis, Mil. R. Evid. 501 (MCM, 2016). *See also United States v. Rodriguez*, 54 M.J. 156, 158 (C.A.A.F. 2000).

[25] *United States v. Scheffer*, 523 U.S. 303, 308 (1998).

[26] *Id.*

The President has promulgated such certainty. Military Rule of Evidence 315(f) specifically lays out what will be considered in evaluating probable cause in the context of search authorizations as opposed to search warrants.

[Mil. R. Evid. 315](f) *Basis for Search Authorizations.*

(1) *Probable Cause Requirement.* A search authorization issued under this rule must be based on probable cause.

(2) *Probable Cause Determination.* Probable cause to search exists when there is a reasonable belief that the person, property, or evidence sought is located in the palace or on the person to be searched. A search authorization may be based on hearsay evidence in whole or in part. A determination of probable cause under this rule will be based upon any or all of the following:

(A) written statements communicated to the authorizing official;

(B) oral statements communicated to the authorizing official in person, via telephone or by other appropriate means of communication.

. . . .

To be sure, both search authorizations and warrants must adhere to the Fourth Amendment of the Constitution of the United States.[27] But, I would hold that Rule 315(f) specifically allows an authorizing official to consider written and oral statements in assessing whether there is probable cause to search, and whether there is reason to believe that the person, property, or evidence sought is located in the place, or on the person, to be searched.

Military Rule of Evidence 315(f) does not contain any requirement that the search authorization must contain "appropriate words of incorporation" in order for the authorizing official to consider hearsay, oral or written statements in assessing probable cause. In fact, the rule requires that probable cause ***will*** be based on the written and/or oral statements made in support of the probable cause determination, so long as they are "communicated" to the authorizing official.[28]

Here, the military judge erred when he concluded that appropriate words of incorporation were required in the search authorization in order for him to consider the supporting affidavit in deciding whether the CASS, coupled with

---

[27] *United States v. Richards*, 76 M.J.365, 368 (C.A.A.F. 2017).

[28] Mil. R. Evid. 315(f)(2) (emphasis added).

the supporting affidavit, satisfied the particularity requirement of the Fourth Amendment. In other words, the military judge found that the one-page CASS was insufficiently specific in its reference to the supporting affidavit for the trial court to consider the supporting affidavit and the CASS together in determining whether the CASS was sufficiently particular in its description of the places to be searched and the things to be seized. To arrive at the "appropriate words of incorporation" requirement, the military judge relied on this Court's decision in *United States v. Armendariz* and its application of the Supreme Court's decision in *Groh* for the proposition that a CASS must include "appropriate words of incorporation" before the supporting affidavit can be considered with the CASS as a whole, in assessing whether the CASS satisfies the Fourth Amendment.[29]

I would reject the application of *Groh*'s "appropriate words of incorporation" requirement to search authorizations as defined in Mil. R. Evid. 315. The President has occupied the field with respect to what may be considered in support of a search authorization. The Supreme Court's holding in *Groh* is limited to search <u>warrants</u>, and is not applicable to search <u>authorizations</u>. Until our Superior Court specifically requires "appropriate words of incorporation" in the context of search authorizations, Rule 315 controls. Thus, it is clear to me that the military judge erred in analyzing the search authorization at issue here without considering Rule 315(f). The appropriate test, as articulated in Rule 315, is whether the supporting information was communicated to the authorizing official.[30] In applying *Groh* to search authorizations, the military judge failed to consider whether the supporting information in the affidavit was <u>communicated</u> to the authorizing official as required by the Rule, and therefore, his ruling was premised on an incorrect legal principle.

---

[29] *See United States v. Armendariz*, 79 M.J. 535 (N-M. Ct. Crim. App. 2019). Importantly and admirably, the military judge duly noted in his 27 June 2024 ruling that *Armendariz* was reversed by our Superior Court. *See United States v. Armendariz*, 80 M.J. 130 (C.A.A.F. 2020). The military judge further notes that in *Armendariz,* this Court only considered *Groh's* "sufficient words of incorporation" requirement in the context of the Court's deterrence analysis. We did not analyze *Groh* in the context of the sufficiency of a search authorization. In this regard, the military judge clearly recognized the dubious precedential authority of this Court's opinion having been reversed by the CAAF. I would go further because I believe the dicta in *Armendariz* upon which the military judge relied is flawed and should be unequivocally rejected. In doing so, we should put to rest any misconception in the field that *Groh* has any applicability to a search authorization, as opposed to a search warrant.

[30] *See* Mil. R. Evid. 315(f)(A); *see also* Mil. R.Evid. 315(f)(2)(b).

In finding that the military judge misapplied the law in not considering Rule 315(f), I would look to whether the information in the accompanying affidavit supporting the search authorization was communicated to the authorizing official pursuant to Rule 315(f).

Here, the facts before the military judge clearly establish that the authorizing official considered the affidavit in conjunction with the CASS and that the package as a whole was "communicated" to the authorizing official. The CASS included the following language: "I am satisfied that there is probable cause to believe that the property so described is being concealed on the person and/or premises above described and that the grounds for application for issuance of a command authorized search exist ***as stated in the supporting affidavit(s)***."[31] Clearly, the information contained in the supporting affidavit was communicated to the authorizing official as there is a direct reference to the supporting affidavit in the CASS. Further, the cover page of the affidavit, titled: "Affidavit for Search Authorization," indicates that the affidavit was made before the commanding officer, and specifically references "Attachment A" (the sworn affidavit). It was also signed by the commanding officer on 17 August 2022.[32] As further support that the information contained in the supporting affidavit was communicated to the commanding officer, at page 11, the last page of the sworn affidavit (Attachment A), the commanding officer again signed the document and hand-wrote his pay grade, military service, title, and command authority. Finally, at the Article 39(a) suppression hearing, Special Agent Lima testified that he: "went to [the authorizing official] with a CASS. A command authorization for search and seizure, to search [Appellee's] barracks room and his person for his electronic devices that belong to him."[33] Thus, the record supports that Special Agent Lima "communicated" the CASS and its supporting information to the authorizing official, again, in accordance with Rule 315.

Taken together, there is no doubt in my mind that the record supports the fact that the search authorization official considered the package as a whole

---

[31] App. Ex. X at 13 (emphasis added). While I disagree that a search authorization, as opposed to a search warrant, must have "appropriate words of incorporation" before a trial court can consider a supporting affidavit to a CASS, I fail to see how the words on the CASS ("as stated in the supporting affidavit(s)"), would not satisfy the requirement for appropriate words of incorporation. The difference between the word "stated" and the word "incorporated" strikes me as an overly formalistic application of *Groh,* and, in this context, a distinction without a difference.

[32] App. Ex. X at 1 (cover page to Attachment A (the affidavit) dated 17 Aug 2022).

[33] R. at 4.

and therefore, the particularities of the supporting information were communicated to the authorizing official in full compliance with Military Rule of Evidence 315. I would remand this case back to the military judge for a determination of whether the CASS, in combination with the supporting affidavit, established probable cause to search Appellee's digital devices.

Accordingly, I respectfully dissent.

FOR THE COURT:

MARK K. JAMISON
Clerk of Court